UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| HOMETOWN CONVENIENCE, LLC, | ) | |
| | ) | |
| Appellant, | ) | Civil Action No. 7: 05-283-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY B. ROBERTS, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Appellee. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court for consideration of Hometown Convenience's Notice of Appeal from Bankruptcy Court. [Record No. 1] Through this action, Hometown Convenience appeals under 28 U.S.C. 158(a)(1) from the Findings of Fact, Conclusions of Law and Order Regarding Motion of Nancy B. Roberts [Bankr. Doc. No. 911] in the matter of *In re Coleman Oil Company*, Bankr. Case No. 02-74204. Hometown asserts that the Bankruptcy Court committed reversible error when it found the Pikeville Lease [Bankr. Doc. No. 892, Ex. A] and Fayette Co. Lease [Bankr. Doc. No. 892, Ex. C] ambiguous, found them to be one document, and determined that lease had been fully assumed by Hometown Convenience. [Bankr. Doc. No. 911] For the reasons stated below, this Court concludes that the contracts are unambiguous; therefore, the use of extrinsic evidence by the Bankruptcy Court was erroneous.

**I.   BACKGROUND**

On October 15, 1994, Nancy B. Roberts (Roberts) entered into a Lease Agreement with a predecessor to the Debtors for a plot of land in Pike County, Kentucky (the Pike Lease). It

appears that this land was to be used for a gas station and convenience store.  The Pike Lease was subsequently assigned to Debtor East Kentucky Convenience Stores, Inc. (EKCS), a subsidiary of Debtor Coleman Oil Company (Coleman), in January of 2000.  The Pike Lease provided for an annual rent payment of $30,000.00.  The initial period of the lease was 10 years, with automatic renewal and an escalation of rent unless cancelled in advance.

Also in January of 2000, Roberts entered into an Agreement with EKCS and Coleman to lease a plot of land in Fayette County, Kentucky, to be used for storage.  Although no signed copy of the Fayette Lease appears in the record, the Bankruptcy Court determined that the lease was in effect.  Neither party contests this determination.  The Fayette Lease called for a $6,000.00 annual rent payment as long as the Pike Lease was in effect, with the rent to be paid even if Roberts ceased to own the Fayette County property.

In September 2002, EKCS and Coleman filed voluntary Chapter 11 petitions.  Pursuant to the November 26, 2002 court order, the Debtors sold substantially all of their assets to Childers Oil Company, Inc. (Childers) pursuant to an Asset Purchase Agreement (APA).  As part of the sale, Childers assumed or was assigned a number of executory contracts.

As part of the bankruptcy procedure, the Debtors were required to file a Schedule G, listing a number of obligations of the debtors.  Part of the Schedule G filing made reference to rent owed to Roberts under the notation "Rent $36,000 Annual Payment".

At some point, Childers assigned its interest in the Pike Lease under the APA to Hometown Convenience (Hometown).  Hometown subsequently paid $36,000.00 to Roberts in January of 2003 and 2004, but paid only $24,000 in 2005.  Rather than pay the sum of

$36,000.00, Hometown withheld $12,000 as an "overpayment" for the previous 2 years. As a result, Roberts filed an adversarial action in the Bankruptcy Court.

On April 20, 2005 the Bankruptcy Court held a preliminary hearing and ordered the parties to depose Marrs Alan May, the attorney who had drafted the Fayette Lease. May was deposed on May 16, 2005. After receiving supplemental memorandum from both parties, the Bankruptcy Court held a final hearing on July 25, 2005, after which it issued its order.

## II. LEGAL STANDARD

A district court reviewing a bankruptcy court's decision in a "core proceeding" functions as an appellate court, applying the standards of review normally applied by federal appellate courts. *In re H.J. Scheirich Co.*, 982 F.2d 945 (6th Cir. 1993). Conclusions of law made by the bankruptcy court are reviewed *de novo*. *City of White Plains, NY v. A&S Galleria Real Estate, Inc.*, 270 F.3d 994 (6th Cir. 2001). Such a review requires that the district court review the legal conclusions reached without regard to the bankruptcy court's prior conclusions of law. *First Union Mortgage Corp. v. Eubanks*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998)

"Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Court to judge the credibility of witnesses." Fed. R. of Bankr. P. 8013. A finding is "clearly erroneous" when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). This standard does not permit a reviewing court to reverse the trial court's findings of fact merely because it would have reached

a different conclusion. *Id*. As long as the trial court's findings are "reasonable and supported by the evidence," they may not be overturned. *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987) (citation omitted).

Absent the "most cogent evidence of mistake or miscarriage of justice" a bankruptcy court's findings will not be disturbed. *In re Edward M. Johnson and Assoc., Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988) (*quoting Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977). Additionally, the district court "may not make its own independent factual findings. If the bankruptcy court's factual findings are silent or ambiguous as to an outcome determinative factual question, the district court . . . must remand the case . . . for necessary factual determinations." *Hardin v. Caldwell*, 851 F.2d 852 (6th Cir. 1988).

### III.   ANALYSIS

By challenging the findings of the Bankruptcy Court, Hometown is in fact challenging several different findings which present mixed questions of fact and law. Because of the different standards of review applied to these findings, this Court must first separate which are findings of fact, and which are conclusions of law. The Court can then apply the proper standard of review, and determine whether any reversible error has occurred.

Ultimately, Hometown is appealing the finding that it is liable for the rent increase under the Fayette Lease. However, before the Bankruptcy Court could reach this decision, it had to make a number of findings, some explicit and some implicit:

(1)   The Fayette Lease was valid, despite the inability to locate a fully signed and executed copy, and despite the lack of any evidence of filing.

(2) Based on the "four corners" of both the Pike Lease and the Fayette Lease, these documents were ambiguous, and extrinsic evidence was necessary to determine their meaning.

(3) The extrinsic evidence proved that the parties intended the two leases to be considered together, and treated as one document.

(4) The two leases should be legally merged for purposes of determining their effect.

(5) The Pike Lease could not be – and was not – taken "free and clear" of the later Fayette Lease under section 363(f).

Findings (1) and (3) are findings of fact, as they involve determinations made by the Bankruptcy Court based on evidence presented to the Bankruptcy Judge, and his determination of its credibility. Findings (2), (4) and (5) are conclusions of law and will be reviewed *de novo* by this Court.

The Bankruptcy Court determined that the Fayette Lease was valid, despite the inability of any party to locate a filed copy. While this determination did not (and could not) occur until after the court had also heard extrinsic evidence regarding the meaning/construction of the two leases, the validity of the Fayette Lease is a separate determination from its construction. As noted above, findings of fact are to be evaluated under a "clearly erroneous" standard. *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985). Under this standard, the Court affirms the Bankruptcy Court's determination that the lease was valid. The Bankruptcy Court's determination of validity is reasonable, and supported by the evidence. *In re Southern Indus. Banking Corp.*, 809 F.2d 329 (6th Cir. 1987). Certainly, upholding this determination will not

result in a "miscarriage of justice". *In re Edward M. Johnson and Assoc., Inc.*, 845 F.2d 1395, 1401 (6th Cir. 1988) (*quoting Slodov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977).

In contrast, the Bankruptcy Court's determination regarding finding (2) (that the leases were ambiguous and required an examination of extrinsic evidence) is a conclusion of law which must be reviewed *de novo*. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 373 (6th Cir. 1998) (The determination of whether a contract is ambiguous, thereby making extrinsic evidence admissible for interpretive purposes, is a question of law and therefore subject to de novo review.) (*quoting Wulf v. Quantum Chem. Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994)). The Court must review the leases in question to determine if they are ambiguous.

Having reviewed both the Pike and Fayette Leases, the Court must conclude that they are not ambiguous. Therefore, the use of extrinsic evidence to determine the construction of their terms was inappropriate. Read on its own, the Pike Lease is unambiguous. It is a fairly standard lease agreement, complete with standard escalation and renewal clauses. It makes no reference to the Fayette Lease. Likewise there does not appear to have been any amendments to the Pike Lease after the Fayette Lease was executed. The only question is whether the Fayette Lease's references to the Pike Lease render both leases sufficiently ambiguous to require extrinsic evidence.

The terms of the Fayette Lease make it clear that both parties had the Pike Lease in mind when agreeing to the terms and payments over the storage space in Fayette County. The duration of the Fayette Lease depends upon continuation of the Pike Lease, and it attempts to make the duration of the Pike Lease reciprocally dependent. Furthermore, the Fayette Lease

provides that the rental payments on the storage space should continue even if Roberts sells the Fayette County property, and should then be deemed consideration. From the face of the document, it is clear both parties meant the Fayette Lease to be an addendum to the Pike Lease.

However, the fact that the parties may have intended for the Fayette Lease to supplement the Pike Lease does not, standing alone, make either the Pike or Fayette Lease ambiguous. If anything, such an intention has just the opposite effect. There is no uncertainty about the terms of either lease, even though the duration of the Fayette Lease is conditional on the Pike Lease. Perhaps more importantly, the final paragraph of the Fayette Lease makes clear that while the parties wanted to supplement their relationship beyond the face of the Pike Lease, they had no intention of altering the Pike Lease. Their intent to keep their understanding "secret" does not confuse the terms of either document. Indeed, it lends credence to Hometown's position that it would be inequitable to require a successor to be bound by a lease that was deliberately concealed from the public record.

Question of fairness or equity, as well as consideration of the Bankruptcy Court's findings in (3), (4) and (5) above, are made irrelevant by this Court's determination that the leases are unambiguous on their face. Where a lease is unambiguous, extrinsic evidence should not be considered. *See Roberts v. Universal Underwriters Ins. Co.*, 334 F.3d 505 (6th Cir. 2003). Based on the record before it, the Court is unable to conclude what impact the Fayette Lease would have on the relationship between Roberts, Hometown and the Debtors had extrinsic evidence not been taken, nor whether the Fayette Lease would have qualified as an interest from which Hometown would be exempted under the "free and clear" provisions of section 363(f).

As such, under *Hardin v. Caldwell, supra,* the Court must remand for further proceedings consistent with this opinion.

### IV. CONCLUSION

The Court finds that the leases in question are unambiguous and, therefore, the Bankruptcy Court erred in admitting extrinsic evidence. Accordingly, it is hereby

**ORDERED** that this case is **REMANDED** to the Bankruptcy Court for further proceedings consistent with this opinion.

This 17th day of November, 2005.

Signed By:
*Danny C. Reeves* DCR
United States District Judge